1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACEY L. Y.,[1] | Case No.  ED CV 19-01096-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

I.    **INTRODUCTION**

       Plaintiff Tracey L. Y. ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

II.    **PROCEEDINGS BELOW**

       On February 27, 2015, Plaintiff filed a Title II application for DIB alleging disability beginning on May 20, 2013.  (Administrative Record ("AR") 283-84.)  Her

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

application was initially denied on August 25, 2015, and upon reconsideration on January 6, 2016. (AR 212-16, 218-22.) Plaintiff filed a Title XVI application for supplemental security income on August 30, 2016. (AR 211.) Her Title XVI application was denied upon reconsideration on March 19, 2017. (*Id.*) Plaintiff filed a written request for hearing, and a hearing was held on May 2, 2018. (AR 223-24, 153-83.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert ("VE"). (AR 153-83.) On May 31, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act, from May 20, 2013, through the date of the decision. (AR 74.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-4.) Plaintiff filed this action on June 13, 2019. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 20, 2013, the alleged onset date ("AOD"). (AR 60.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; degenerative changes of the shoulder and knee; and depression with anxiety. (AR 61.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work . . . except she can occasionally climb, balance, stoop, kneel, crouch, and crawl. She can perform tasks of a nature that can be learned within a short demonstration period of up to 30 days with no more than frequent changes to the workplace tasks and duties.

> She can maintain concentration, pace, persistence, at that limited range of tasks for two hours at a time before taking a regularly scheduled break and then returning to work throughout the workday.

(AR 63-64.)

At **step four**, the ALJ found that Plaintiff is unable to perform any of her past relevant work.  (AR 71.)  At **step five** the ALJ found there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (AR 72; *see* AR 73-74.)  Accordingly, the ALJ determined that, as to Plaintiff's claim for a period of disability, DIB, and supplemental security income, Plaintiff had not been under a disability from the AOD through the date of the decision.  (AR 74.)

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  *Ryan*

3

1  *v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*
2  *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the
3  evidence can support either affirming or reversing the ALJ's conclusion, we may not
4  substitute our judgment for that of the ALJ."). The Court may review only "the
5  reasons provided by the ALJ in the disability determination and may not affirm the
6  ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th
7  Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

8  **IV.   DISCUSSION**

9  Plaintiff raises two issues for review: (1) whether the ALJ properly considered
10  the opinion evidence of record; and (2) whether the ALJ properly considered
11  Plaintiff's statements and testimony. (*See* Joint Submission ("JS") 4.)

12  **A.   The ALJ Properly Considered Plaintiff's Statements and**
13  **Testimony[2]**

14  Plaintiff argues that the ALJ failed to articulate legally sufficient reasons for
15  rejecting Plaintiff's testimony. (JS 23; *see* JS 16-23, 29.) The Commissioner
16  disagrees. (JS 23; *see* JS 23-28.)

17  **1.   Plaintiff's May 2, 2018 Testimony**

18  Plaintiff testified that she lives in a mobile home with her mother. (AR 161.)
19  She stated that she can get out of bed and dress herself. (*Id.*) Plaintiff's mother takes
20  care of the house, including cooking, cleaning, laundry, and grocery shopping. (AR
21  161-62.) When Plaintiff helps with the cooking, she starts something in the crockpot.
22  (*Id.*) She does her own laundry. (*Id.*)

23  Plaintiff said that she keeps busy by talking with girlfriends on the phone,
24  reading, and "a lot of tv watching." (AR 163.) She sees her friends occasionally.

25  ///

26  ---
27  [2] Because the ALJ first considered Plaintiff's subjective symptom testimony in assessing Plaintiff's RFC, the Court addresses whether the ALJ properly considered Plaintiff's statements and testimony before discussing the ALJ's consideration of the
28  opinion evidence.

1    (*Id.*)  They will usually pick her up and drive her to their homes to sit around and

2    catch up.  (*Id.*)

3          Plaintiff testified that she is "pretty much permanent and stationary on [her]

4    lower back."  (AR 163-64.)  She had a right knee surgery in November 2017 for an

5    ACL meniscus tear and a Baker's cyst.  (AR 164.)  Plaintiff explained that her doctor

6    informed her that she is "bone on bone" on her right knee and will require a total

7    knee replacement.  (*Id.*)  Plaintiff's left knee also has meniscus and ACL tears and

8    she will undergo surgery once her leg is stronger.  (*Id.*)  She has had right shoulder,

9    rotator cuff, labrum tear, and two neck surgeries.  (*Id.*)  Plaintiff reports "[a] lot of

10   pain, a lot of hard time swallowing."  (*Id.*)  She also had "back surgeries, interior,

11   posterior, [and] fusion on [her] lower back."  (*Id.*)  Plaintiff was also informed that

12   because her right shoulder does not have cartilage on the back, it is highly possible

13   that she will need a shoulder replacement.  (*Id.*)

14         Plaintiff finished the 11th grade and obtained her GED.  (AR 158.)  She last

15   worked in May 2013, as a phlebotomist for United West Labs.  (AR 159.)  She ran

16   an outpatient laboratory which included a "program doing in-home draws where

17   [she] would get up before work and would travel to all of these board and care

18   homes."  (AR 167.)  Plaintiff described these blood draws as "hard draws" because

19   the patients were mostly disabled and could be combative.  (*Id.*)  Plaintiff would then

20   go to work and see her "regular patients."  (AR 168.)  She would do all the paperwork,

21   the draws, clean the offices, stock, and order.  (*Id.*)  She described it as a "one-man

22   show."  (*Id.*)

23         Plaintiff stopped working because of neck pain and because her arms were

24   going numb.  (AR 159, 168-69.)  She had pain that went down her right leg into her

25   right foot which was causing numbness and pain.  (AR 159.)  Plaintiff left her job

26   because she was "written off by a doctor."  (*Id.*)

27         In 2010, a car drove through Plaintiff's place of employment and hit her from

28   behind, propelling her across the room.  (*Id.*)  The injuries that Plaintiff sustained

from the accident "started giving [her] limitations at work." (*Id.*) Plaintiff explained that keeping up with her day to day work and trying to deal with the pain and get through it started to break her down. (AR 168.) Plaintiff expressed limitations, including driving, bending over, and walking. (*Id.*) Her arms were going numb and "[t]rying to draw proficiently was starting to become a problem." (*Id.*) "[T]he pain was just getting worse and worse and train of thought and just trying to be proficient at what [she] was doing was diminishing." (*Id.*) Plaintiff had limited mobility and shoulder pain "as far as raising her arms or trying to squat to draw blood for some of the harder bloods or constantly bending." (AR 169.)

Plaintiff also worked as her sister's primary care giver through May 2013. (AR 160.) Plaintiff's sister lived with her until 2015. (*Id.*)

Plaintiff reported having limited mobility post-surgery. (AR 169.) She cannot bend, stoop, or kneel because her knees hurt. (*Id.*) She also noted that the mobility on her neck is not there. (*Id.*) She also has numbness in her arms, "like a constant tingling in [her] arms," so she does not feel that she can do her job. (*Id.*)

Plaintiff testified that she does "some texting on the phone," but she would rather "talk to a person than text." (AR 170.) She did not know how many texts or emails she can write because she is not a huge texter. (*Id.*) She could write out a handwritten page. (*Id.*) Plaintiff described being limited in her ability to stand before the pain takes over. (*Id.*) She can stand for 15 to 20 minutes before needing to sit down. (*Id.*) Prolonged sitting causes everything to tighten up, and she can feel it in her lower back and legs. (*Id.*) Plaintiff can sit for 15 to 20 minutes before she has to stand. (AR 170-71.) She would normally get up and "do a little bit of a walk." (AR 171.) She testified that she tries to stretch out and lay on her back. (*Id.*) Plaintiff explained that "most relief comes when [she is] laying straight or reclining." (*Id.*) Plaintiff can walk "maybe half a block, quarter of a block" before she needs to stop because of pain or fatigue. (*Id.*) She can lift a couple of pounds. (*Id.*) Plaintiff said she can grocery shop but cannot "put anything significant in the basket." (AR 172.)

Plaintiff testified that she uses hand braces and wears a brace on her right knee. (AR 172.)  Plaintiff's hand braces do not help much because she does not feel pain in her hands, but rather numbness.  (*Id.*)  Her knee brace gives some stability.  (*Id.*)

Aside from going to doctors' appointments, Plaintiff said she goes out once or twice per week.  (AR 172.)  If she overexerts herself, she stays in bed with a "heating pad" on her back for one or two days.  (*Id.*)  Plaintiff stated that she takes ibuprofen for the pain and takes anxiety medication.  (*Id.*)  She described experiencing panic attacks.  (AR 173.)  Her anxiety comes on depending on what she needs to do.  (AR 173-74.)  She stated that she suffers from anxiety before driving and that her ex-husband drove her to the hearing.  (AR 157-158, 174.)

Finally, Plaintiff testified that she "hate[s] being in the situation that [she is] in."  (AR 182.)  She loved her job and wishes that she could return to work.  (*Id.*)

## 2.    Plaintiff's May 11, 2015 Function Report

On May 11, 2015, Plaintiff prepared a function report.  (*See* AR 335-43.)  She reported that her anxiety keeps her from doing things on her own or from operating a car on some days.  (AR 335.)  Plaintiff's lower back pain restricts her from standing, walking, bending, stooping, and kneeling.  (*Id.*)  Her right shoulder restricts her range of motion "as far as reaching across or above [her]."  (*Id.*)

During the day, Plaintiff reported that she feeds the animals, takes care of her children and takes them to school, cleans the kitchen, waters the front and back yard, and does laundry.  (AR 336.)  Plaintiff then rests until dinner.  (*Id.*)  Before her injuries, Plaintiff was able to clean her house, go shopping, hike, dirt bike ride, water tube, dance, and exercise.  (*Id.*)  Plaintiff stated that she is unable to sleep due to lower back, shoulder, and neck pain.  (*Id.*)

Plaintiff reported no problems with her ability to perform personal care or take medicine.  (AR 336-337.)  She prepares her own meals such as frozen dinners or "easy one dish dinners," which take between five to 15 minutes to prepare.  (AR 337.)  Her cooking habits have changed since her injuries, and she reported that she is

7

unable to stand and prepare time consuming meals because of her lower back pain. (*Id.*)

As to household chores, Plaintiff reported that she dusts, wipes counters in the kitchen and bathroom, does "limited sweeping," takes out the trash, waters the yard and plants, and does laundry. (AR 337.) She does not need encouragement to do these things. (*Id.*) She goes outside daily. (AR 338.) When she goes out, she drives a car. (*Id.*) She can go out alone. (*Id.*) Plaintiff shops on her computer for household items twice per year. (*Id.*) Plaintiff reported that she is able to pay her bills, count change, handle a savings account, and use a checkbook or money order. (*Id.*) Plaintiff stated that her ability to handle money has not changed since her illnesses. (AR 339.)

Plaintiff's hobbies and interests include cooking, hiking, ATV riding, and water tubing. (AR 339.) Since her injury, these activities cause her extreme pain in her lower back and neck. (*Id.*) She stated that she spends time with others weekly, either by talking on the phone or in person. (*Id.*) She does not have to be reminded to go places. (*Id.*) Plaintiff does not have problems getting along with family, friends, neighbors, or others. (*Id.*) Since her injuries, Plaintiff has restricted her activities depending on where and what is involved. (*Id.*)

Plaintiff reported that her injuries affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, and climb stairs. (AR 340.) Plaintiff's injuries also affect her memory, her ability to complete tasks, concentrate, understand, and follow instructions. (*Id.*) Her anxiety and depression affect her other limitations. (*Id.*) She stated that she can walk half a mile to a mile before needing to rest for 20 or 30 minutes. (*Id.*) Plaintiff stated that she can finish tasks that she starts. (*Id.*) She can follow written and spoken instructions "okay." (*Id.*) She reported that she gets along well with authority figures. (AR 341.) She has never been fired or laid off from a job because of problems getting along with others. (*Id.*) She does not handle stress or changes in routine well. (*Id.*) She has noticed unusual behaviors or fears. (*Id.*)

1  Plaintiff takes Percocet, Norco, and Valium for her conditions.  (AR 342.)  These

2  medications cause drowsiness.  (*Id.*)

3  ### 3.  Applicable Legal Standards

4  "In assessing the credibility of a claimant's testimony regarding subjective

5  pain or the intensity of symptoms, the ALJ engages in a two-step analysis."  *Molina*

6  *v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d

7  586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has

8  presented objective medical evidence of an underlying impairment which could

9  reasonably be expected to produce the pain or other symptoms alleged."  *Treichler v.*

10  *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting

11  *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted).  If so, and if the

12  ALJ does not find evidence of malingering, the ALJ must provide specific, clear and

13  convincing reasons for rejecting a claimant's testimony regarding the severity of his

14  symptoms.  *Id*.  The ALJ must identify what testimony was found not credible and

15  explain what evidence undermines that testimony.  *Holohan v. Massanari*, 246 F.3d

16  1195, 1208 (9th Cir. 2001).  "General findings are insufficient."  *Lester*, 81 F.3d at

17  834.

18  ### 4.  Discussion

19  "After careful consideration of the evidence," the ALJ found that Plaintiff's

20  "medically determinable impairments could reasonably be expected to cause the

21  alleged symptoms," but found that Plaintiff's "statements concerning the intensity,

22  persistence and limiting effects of these symptoms are not entirely consistent with

23  the medical evidence and other evidence in the record."  (AR 64.)  The ALJ found

24  that "the evidence of record does not support the extent of [Plaintiff's] allegations"

25  and Plaintiff's "day-to-day activities are inconsistent with the extent of her

26  allegations."[3]  (AR 68.)  No malingering allegation was made, and therefore, the

27

28  ---
[3] The Commissioner contends that the ALJ also relied on Plaintiff's course of treatment.  (JS 26.)  Plaintiff contends that surgery is not a conservative process.  (JS

1  ALJ's reasons must be "clear and convincing."

2          **a.**    **Reason No. 1: Inconsistency Between Plaintiff's**

3  **Symptom Testimony and the Medical Record**

4        The lack of supporting objective medical evidence cannot form the sole basis

5  for discounting testimony, but it is a factor that the ALJ may consider in making a

6  credibility determination. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d

7  853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Plaintiff argues that

8  "[t]he records cited by the ALJ do not provide a clear and convincing basis for

9  rejecting [Plaintiff's] symptoms and limitations." (JS 20; *see* JS 19-22.)

10        After summarizing the objective medical evidence, the ALJ found that the

11  evidence of record did not support the extent of Plaintiff's allegations. (AR 68; *see*

12  AR 64-68.) Specifically, the ALJ found that Plaintiff had a "long history of

13  orthopedic complaints, which have shifted in focus, and improved with surgical

14  intervention despite failure to follow through with formal physical therapy."[4] (AR

15  68, citing AR 660, 682, 702, 764, 1008.) The ALJ also found that even though

16  Plaintiff has "residual pain and stiffness, she retains an independent gait, normal

17  station, and intact strength and sensation, without focal deficits." (AR 68, citing AR

18  485, 660-61, 680, 682-83, 724, 739, 757, 790, 842.) As to Plaintiff's psychological

19  condition, the ALJ notes that there is minimal reference to psychological issues

20

21  29.) However, the ALJ did not rely on Plaintiff's course of treatment, but instead
22  simply noted that Plaintiff's "[t]reatment notes document several years of
   conservative treatment for low back pain following a workplace injury in 2010." (AR
23  384, 386.) Because the ALJ did not rely on Plaintiff's alleged conservative treatment,
24  the Court may not review the reason now presented by the Commissioner. *Orn*, 495
   F.3d at 630 (the Court may review only "the reasons provided by the ALJ in the
25  disability determination and may not affirm the ALJ on a ground upon which he did
   not rely").

26  [4] Plaintiff takes issue with the ALJ's indication that Plaintiff may not have been fully
27  compliant with treatment. (JS 21.) However, the ALJ did not rely on Plaintiff's
   potential noncompliance in considering Plaintiff's testimony, but rather on Plaintiff's
28  improvement despite instances of noncompliance. (*See* AR 68.)

despite her receiving treatment for other conditions and she has intact cognition, memory, judgment, and insight.  (AR 68, citing AR 673-77, 727, 752.)

As to Plaintiff's lower back pain, the ALJ noted several normal examination results following Plaintiff's 2010 injury.  (AR 65, citing AR 404-12, 435, 437, 457, 527-28, 629-72, 686-742.)   The ALJ pointed to treatment records documenting Plaintiff's ability to balance on her toes and heels, squat fully, ambulate independently, and that Plaintiff had full strength.  (AR 65, citing AR 494, 513, 581-82, 585-86, 656, 710-12.)   The ALJ also relied on 2014 and 2015 records that identified tenderness and stiffness, but also showed Plaintiff had full strength, normal reflexes, no focal neurological findings, and an independent gait with no apparent distress.  (AR 65, citing AR 486, 680-82, 757, 761.)  Additionally, the ALJ relied on treatment records documenting improvement in Plaintiff's condition after she underwent a lumbar fusion in August 2014.  (AR 65, citing AR 660-61.)   Plaintiff also reported that her back pain was significantly improving.  (AR 660.)  The ALJ also cited to an August 2015 "medical re-evaluation" in which Plaintiff reported that the "surgery was helpful in that she no longer experienced sharp shooting pain along the right leg" and that "painful muscle spasms in the lower back subsided somewhat." (AR 65, citing AR 745.)

Similarly, as to Plaintiff's history of degenerative disc disease of the cervical spine, the ALJ relied on normal examination results in spite of Plaintiff's claims of sore muscles, stiffness, and neck pain.  (AR 66; *see* AR 494, 578, 655.)  The ALJ noted that "there was no electrodiagnostic evidence of cervical radiculopathy."  (AR 66; *see* AR 437, 457.)   Additionally, Plaintiff's physician opined that "historic imaging did not demonstrate any significant degenerative changes consistent with her complaints."  (AR 66; *see* AR 660.)

The ALJ also noted that in 2014, Plaintiff "complained of increasing radicular symptoms" and "imaging documented a disc herniation compressing the left C7 nerve root."  (AR 66, citing AR 665, 669.)  However, the ALJ pointed to non-focal

neurological findings, preserved strength, and Plaintiff's ability to ride a bike over five miles without restriction.  (AR 66, citing AR 485, 699, 771, 790, 842.)  While Plaintiff underwent a cervical fusion on March 6, 2015, the ALJ relied on notes indicating that Plaintiff's symptoms had resolved after the surgery, Plaintiff "look[ed] good,' had been participating in childcare, was able to drive, and x-rays revealed normal bone quality and indicated that the surgical hardware was intact." (AR 66, citing AR 680, 682-83, 702, 764, 768.)  The ALJ also noted that, following the surgery, Plaintiff did not appear to be in acute or chronic distress, she "retained grossly intact strength, intact grip, well-preserved sensation, and physiologic reflexes, and provocative testing was negative."  (AR 66, citing AR 680, 682, 753.) Plaintiff found relief in analgesic injections and chiropractic adjustment, but did not receive physical therapy.  (AR 66, citing AR 745-46.)  The ALJ did find that Plaintiff had a brief setback in 2015 when Plaintiff had to undergo revisionary surgery due to pseudarthrosis secondary to tobacco abuse, but subsequent records make minimal reference to the condition and there was no significant intervention.  (AR 66, citing AR 884, 888, 955.)

As to Plaintiff's right shoulder impingement, the ALJ found that Plaintiff's condition improved markedly after her September 2013 surgery.  (AR 66, citing AR 473, 690.)   The ALJ noted that in spite of Plaintiff's failure to participate in postsurgical physical therapy, "subsequent examinations were negative for impingement or instability, imaging did not identify significant degenerative joint disease or failure of the rotator cuff repair, and her doctor felt that no further treatment was indicated."  (AR 66, citing AR 681, 691, 694, 728, 764.)  Additionally, the ALJ relied on the fact that treatment notes did not identify any worsening or treatment after the surgery.  (AR 66-67.)  For example, the ALJ noted that in October 2014, Plaintiff's physician found Plaintiff had some tenderness and a limited range of motion, but found Plaintiff had "markedly improved" and "no further treatment [was] indicated."  (AR 67, citing AR 690-91.)  In treatment records from 2015, Plaintiff

reported pain, but the ALJ noted that the records showed no evidence of loss of strength, impingement, deformity, instability, or neurovascular or neurological abnormality, and x-rays showed no evidence of significant degenerative joint disease. (AR 67, citing AR 679, 681, 764.)  The ALJ also noted that "[c]urrent records make no significant reference to the condition."  (AR 67, citing AR 768-1015.)

Regarding Plaintiff's complaints about her knees, the ALJ relied on Plaintiff's post-surgery improvement and Plaintiff's reports that she was feeling better.  (AR 67, citing AR 1000-01, 1005.)  A February 2018 evaluation showed that Plaintiff had significant improvement in range of motion, and a month later Plaintiff reported improvement of pain at night, while the examination showed Plaintiff was "free of instability."  (AR 67, citing AR 1008, 1012.)

Finally, as to Plaintiff's depression, the ALJ found that the "record contains minimal reference to evaluation and treatment of depression with anxiety, largely limited to intermittent prescription of medications."  (AR 68.)  The ALJ relied on a June 17, 2015 psychiatric evaluation and found Plaintiff "remains independent in completing her activities of daily living and demonstrates appropriate behavior, cognition, memory, judgment, and insight upon examination."  (*Id.*, citing AR 673-77.)  The ALJ noted that Plaintiff was prescribed an anti-depressant in July 2015 and reported depression and anxiety in August 2015 (AR 727, 746), but that in August 2015, Plaintiff denied stress, mood swings, or panic attacks (AR 752).  (AR 68.)

The Court finds that the ALJ thoroughly considered Plaintiff's medical records (*see* AR 64-68) and found the records did not support Plaintiff's allegations of disabling symptoms (*see* AR 68).  *See Reddick*, 157 F.3d at 725.  Throughout the medical record are examination notes and reports showing normal results, all of which the ALJ was permitted to rely on in assessing Plaintiff's testimony.  *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations); *Margolis v. Berryhill*, No.

CV 17-5047 SS, 2018 WL 3129775, at *10 (C.D. Cal. June 22, 2018) (holding that ALJ may rely on normal and unremarkable examinations in discounting a claimant's subjective testimony).  Additionally, the ALJ was allowed to rely on examination notes and reports showing Plaintiff's improved condition.  *See De Herrera v. Astrue*, 372 F. App'x 771, 774  (9th Cir. 2010) (finding that an ALJ properly considered a claimant's improved condition with treatment in discounting a claimant's complaints of debilitating pain); *Huntsman v. Colvin*, No. EDCV 13-1300 JC, 2014 WL 808020, at *9 (C.D. Cal. Feb. 28, 2014) (holding that ALJ may rely on medical records reflecting improvement over time and refusing to "second guess the ALJ's reasonable interpretation of this medical evidence which is supported by substantial evidence in the record.").  Accordingly, the inconsistency between Plaintiff's testimony and the medical evidence in the record is a specific, clear and convincing reason for discounting Plaintiff's subjective symptom testimony.

### b.      Reason No. 2: Activities of Daily Living

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

Here, the ALJ found that Plaintiff's "day-to-day activities are inconsistent with the extent of her allegations."  (AR 68.)  The ALJ cited records indicating that Plaintiff is able to walk two miles per day and can ride her bike for more than five miles without restrictions.  (*Id.*, citing AR 485, 660-61, 680, 682-83, 724, 739, 757, 790, 842.)  Plaintiff contends that "[t]he surgical report cited by the ALJ does not support activities in contradiction to [Plaintiff's] testimony and statements."  (JS 21, citing AR 790.)  The Court agrees that some of the records that the ALJ relied on in finding that Plaintiff can walk two miles and ride her bike for more than five miles are not supportive.  For example, the ALJ relied on a March 6, 2015 note which discusses Plaintiff's surgery but makes no mention of Plaintiff's ability to walk or

ride a bike.  (AR 68, citing AR 790.)  The ALJ also relied on an orthopedic evaluation in which Plaintiff explained she was "walking only to a limited degree," but her physician "encouraged her to walk up to two miles a day."  (AR 724.)  Plaintiff argues that this "note does not establish that [Plaintiff] was engaging in any of the activities that [her doctor] recommended, just that [her doctor] did so."  (JS 21.)  However, the ALJ also relied on an October 2014 evaluation where Plaintiff reported that "her husband [was] making her walk two miles a day."  (AR 68, citing AR 660-61.)

Plaintiff's ability to walk two miles per day does not, on its own, detract from Plaintiff's subjective complaints.  Here, Plaintiff's physician "encouraged" and "push[ed] her to walk more."  (AR 724.)  Some activities, such as walking, "are not necessarily transferable to the work setting with regard to the impact of pain" because "[a] patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved."  *Vertigan*, 260 F.3d at 1050; *Castillo v. Colvin*, No. ED CV 12-0897 JCG, 2013 WL 1855783, at *1 n.3 (C.D. Cal. Apr. 29, 2013) (finding that walking is "not so physically or mentally demanding that any inconsistencies are apparent").  However, the Court finds it was appropriate for the ALJ to weigh the evidence in the medical records against Plaintiff's testimony regarding her limitations.

Likewise, the Court finds that the ALJ was permitted to weigh the evidence regarding Plaintiff's swimming activities against her testimony regarding limitations on walking and standing.  Plaintiff told her physician that she likes to swim and visits the river often as "she feels quite good in the water and swims regularly and does a form of pool or water therapy while at the river."  (AR 739.)  The ALJ noted that this is inconsistent with Plaintiff's reported neck and upper extremity pain.  (AR 68.)  As discussed above in relation to Plaintiff's ability to walk two miles, Plaintiff's ability to swim regularly does not, on its own, detract from her statements.  *Vertigan*, 260 F.3d at 1050.  However, the Court finds that the ALJ was permitted to rely on the

15

overall level activity displayed by Plaintiff in evaluating her credibility.  *See John C. S. v. Saul*, No. CV 18-5901-KS, 2019 WL 3067584, at *8 (C.D. Cal. July 12, 2019) ("ALJ reasonably found that evidence of swimming was inconsistent with Plaintiff's allegations of constant, debilitating pain, even if an activity such as therapeutic swimming does not necessarily transfer to a work setting").

The ALJ cited other daily activities that were inconsistent with the degree of limitations Plaintiff reported, stating that while Plaintiff alleges "profound physical limitation preventing sitting or standing for more than 20 minutes at a time or lifting more than two pounds, the record indicates that she has been physically active." (AR 68.)  The ALJ relied on Plaintiff's function report statements in which Plaintiff "admitted that she is able to perform her own dressing, bathing, eating, and toileting, water[ing] her yard and garden, pick[ing] up around the house, do[ing] her own laundry, and perform[ing] light cooking and shopping."  (AR 68-69.)  Plaintiff also reported being able to feed pets, take her children to school, clean her kitchen, dust, sweep, and take out the trash.  (AR 69.)  Additionally, the ALJ noted that Plaintiff testified she is able to handwrite a page of notes and write text messages.  (*Id.*)

The ALJ also found that despite reports of depression and anxiety, Plaintiff did not need reminders to take care of her personal needs, take medication, or go places. (AR 69, citing AR 337, 339.)  She also did not need encouragement to complete daily tasks.   (*Id.*)   The ALJ relied on Plaintiff's ability to go "outside daily and independently, ke[ep] in contact with others by phone or in person," and had no issue getting along with others.  (AR 69.)  Plaintiff could also use a computer, handle her finances, and finish what she started.  (*Id.*, citing AR 338.)  Plaintiff "was able to follow written and spoken instructions without any significant difficulty."  (AR 69, citing AR 340.)

"The ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores . . . that are transferable to a work setting."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

1
2
3
4
5
6
7
8
9
10
11

Plaintiff contends that to the extent the ALJ relies on Plaintiff's activities of daily living, "those rarely translate to a capacity for work in a rigorous, demanding setting" (JS 22), but makes no further argument.  Even where "activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.  The Court finds that the ALJ properly found that Plaintiff's alleged physical limitations and pain were inconsistent with Plaintiff's daily activities and that this was a clear and convincing reason for discounting Plaintiff's symptom complaints. *See McDermott v. Astrue*, 387 F. App'x 732, 733 (9th Cir. 2010) (finding that ALJ properly discounted claimant's subjective symptom testimony where claimant "perform[ed] various chores, shopping, and gardening").

12

### 5.    Conclusion

13
14

In sum, the Court finds that the ALJ gave specific and clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

15

### B.    The ALJ Properly Considered the Opinion Evidence of Record

16
17
18
19
20
21
22
23
24

Plaintiff raises several challenges regarding the ALJ's treatment of opinion evidence.  Plaintiff contends that the ALJ failed to state legally sufficient reasons for giving limited weight to the opinions of examining physician Peter M. Newton, M.D. and consultative examiner Vicente Bernabe, D.O.  (*See* JS 5-11, 14-16.)  Plaintiff also contends that the ALJ erred in failing to impose limitations on Plaintiff's ability to stand or walk as opined by consultative examiners D. Chan, M.D. and J. Berry, M.D.  (JS 9-10.)  The Commissioner contends that "[s]ubstantial evidence supports the ALJ's evaluation of the opinion evidence, the RFC finding, and the Step Five finding."[5]  (JS 11; *see* JS 11-14.)

25

///

26

_____

27
28

[5] While not framed as a separate issue, Plaintiff also challenges the ALJ's decision at step five.  (*See* JS 9-10.)  Because the Commissioner discusses this argument in its response, the Court will address this issue.

### 1.   Applicable Legal Standards

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *see Robbin*s, 466 F.3d at 883 (citing Soc. Sec. Ruling 96-8p (July 2, 1996), 1996 WL 374184, at *5). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 C.F.R. §§ 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

18

**2.** **Discussion**

**a.** **Dr. Bernabe**

Consultative examiner Dr. Bernabe examined Plaintiff in June 2015. (AR 679-84.) Dr. Bernabe opined that Plaintiff is able to lift and carry 20 pounds occasionally and 10 pounds frequently. (AR 683.) Plaintiff could push and pull on an occasional basis. (*Id.*) She can walk and stand for six hours out of an eight-hour day. (*Id.*) Similarly, she is able to sit six hours out of an eight-hour day. (*Id.*) Plaintiff can walk on uneven terrain, climb ladders, and work at heights occasionally, and does not need an assistive device to walk. (*Id.*) Dr. Bernabe opined that there were no limitations for fingering and feeling. (*Id.*) As to Plaintiff's ability to reach and handle, Plaintiff could do so frequently with her right upper extremity and unrestricted with her left upper extremity. (*Id.*) Plaintiff is able to bend, crouch, stoop, and crawl occasionally. (*Id.*)

The ALJ gave partial weight to the opinion of Dr. Bernabe, because "Dr. Bernabe was not able to review [Plaintiff's] treatment history, and some of his postural and manipulative limitations exceeded the evidence documented in [Plaintiff's] treatment notes." (AR 69.) The ALJ did not discuss Dr. Bernabe's opinion that Plaintiff is limited in her ability to stand and/or walk and sit. (*See id.*) Plaintiff contends that the ALJ erred in discounting Dr. Bernabe's opinion. (*See* JS 9-11.) The Commissioner does not specifically dispute this contention, but, instead, contends that "any error the ALJ may have made is not material." (JS 13-14.)

As noted by the ALJ, Dr. Bernabe did not have an opportunity to review Plaintiff's medical records. (*See* AR 679-84.) "[T]he failure to review medical records is not a specific and legitimate reason to reject an examining physician's opinion because the opinion of an examining physician that is based on independent clinical findings may constitute substantial evidence." *Danny N. v. Berryhill*, No. CV 16-6715-SP, 2018 WL 6305660, at *4 (C.D. Cal. Nov. 30, 2018). Here, Dr. Bernabe's opinion was rendered after a complete orthopedic evaluation, including a

neurological examination.  (AR 679-84.)  Accordingly, this was not a specific and legitimate reason for rejecting Dr. Bernabe's opinion.

However, the ALJ also found that Dr. Bernabe's opinion exceeded the evidence documented in Plaintiff's medical record.  (AR 69.)  An ALJ may reject a physician's opinion where the opinion is inconsistent with the medical record. *Tommasetti*, 533 F.3d at 1041.  The ALJ found that "later records [did] not document significant ongoing concerns regarding [Plaintiff's] shoulder, and later x-rays confirmed that [Plaintiff's] surgical repair remained intact without evidence of significant degenerative changes."  (AR 69.)  Additionally, "[e]xaminations of elbows, wrists, hands, fingers, were largely normal."  (*Id.*)  Similarly, the ALJ noted that "there [was] little evidence of ongoing complication following [Plaintiff's] cervical revision, and other procedures and the record documents significant improvement in [Plaintiff's] related complaints."  (AR 69-70.)  The Court concludes that the ALJ set out a detailed and thorough summary of the conflicting evidence in discussing Dr. Bernabe's opinion and provided a specific and legitimate reason supported by substantial evidence in assigning partial weight to Dr. Bernabe's opinion.  *See Garrison*, 759 F.3d at 1012.

Because the ALJ has provided a specific and legitimate reason for discounting Dr. Bernabe's opinion, "[a]ny error in relying on additional reasons to reject [Dr. Bernabe's] opinion was harmless."  *See Barney v. Berryhill*, 769 F. App'x 465, 466 (9th Cir. 2019).

### b.    Drs. Chan and Berry

Dr. Chan reviewed Plaintiff's application (*see* AR 188, 190-91), and Dr. Berry reviewed the application upon reconsideration (*see* AR 204-05).    Notably, in assessing Plaintiff's claim, Dr. Chan found Dr. Bernabe's opinion was reasonable and gave the opinion "great weight."  (*See* AR 188, 190.)  Dr. Chan found that Plaintiff had exertional limitations.  (AR 190.)  Plaintiff could occasionally lift and/or carry 20 pounds, but could frequently lift and/or carry 10 pounds.  (AR 190-91.)  She

could stand and/or walk for about six hours in an eight-hour workday and could sit for a total of about six hours in an eight-hour workday with normal breaks. (AR 191.) Plaintiff's ability to push and/or pull was unlimited "other than shown, for lift and/or carry." (*Id.*) Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds. (*Id.*) She could occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*) Dr. Chan opined that Plaintiff did not have any manipulative, visual, communicative, or environmental limitations. (*Id.*) Dr. Chan found Plaintiff had a "light RFC." (*Id.*) Dr. Berry adopted Dr. Chan's RFC finding and found no new limitations. (AR 205; *see* AR 204-05.)

As to the opinions of Drs. Chan and Berry, Plaintiff contends that the ALJ erred by omitting their opined limitations that Plaintiff could sit, stand, and/or walk for six hours out of an eight-hour workday as part of Plaintiff's RFC. (JS 9-11.) The Commissioner contends that any error is not material. (JS 13-14.)

In giving great weight to the opinions of Drs. Chan and Berry, the ALJ noted that the opinions were "reasonably consistent with the record as a whole" and noted that the opinions were consistent with Plaintiff's "ability to walk long distances, bike over five miles at a time, swim in a river regularly, do laundry, take out trash, drive, and grocery shop." (*Id.*) The ALJ ultimately assessed an RFC for Plaintiff that allowed for "light work," but did not expressly impose a standing/walking/sitting limitation. (AR 63-64.)

Plaintiff contends that this was error because the "full range of light work does not envision a limitation in standing/walking," and cites to 20 C.F.R. §§ 404.1567(b) and 416.967(b). (JS 9; *see* JS 10.) However, "light work" has been defined "[as requiring] standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.'" *Roman v. Colvin*, No. ED CV 14-409-SP, 2015 WL 5768375, at *5 (C.D. Cal. Sept. 29, 2015) (quoting Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983)). Additionally, "[s]itting may occur intermittently during the remaining time." Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5-6. Thus, while the

ALJ did not specifically include the standing/walking limitation as opined by Drs. Chan and Berry, the RFC assessment of light work adequately captured this restriction. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that an RFC assessment adequately captures restrictions in broad functional areas if it is consistent with the concrete limitations in the medical opinion). Accordingly, the ALJ did not err in connection with Dr. Chan's and Dr. Berry's opinions.

### c.    Dr. Newton

Dr. Newton examined Plaintiff in June 2013 (*see* AR 574-96), in August 2015 (*see* AR 744-67), and again in August 2018, this last examination occurring after the date of the ALJ's decision (*see* AR 10 -41).

In June 2013, after examining Plaintiff and reviewing her medical history, Dr. Newton found that Plaintiff "has a significant right shoulder condition.  She . . . developed significant stiffness in the right shoulder consistent with impingement and adhesive capsulitis."  (AR 592.)  As to Plaintiff's work limitations, Dr. Newton opined that Plaintiff had "permanent work restrictions for the cervical spine of no lifting of more than 15 pounds and no repetitive or prolonged overhead work."  (AR 594.)  She could lift no more that 15 pounds and could not lift repeatedly to or above shoulder level.  (*Id.*)  "With respect to the lumbar spine, she has permanent work restrictions of no lifting more than 15 pounds, no prolonged walking, sitting or standing more than 30 minutes per hour and no repetitive bending, stooping, twisting, squatting or turning."  (*Id.*)

On August 4, 2015, Dr. Newton examined Plaintiff again and reviewed her medical records.  (AR 744-67.)  Dr. Newton opined that Plaintiff could not engage in "heavy lifting (10 pounds) and no repetitive or prolonged overhead work."  (AR 766.)  Additionally, Plaintiff could not engage in repetitive lifting to or above shoulder level.  (*Id.*)  Plaintiff could not engage in "repetitive bending, stooping, twisting, squatting[,] or turning."  (*Id.*)

In August 2018, after examining Plaintiff and reviewing her medical records, Dr. Newton opined that Plaintiff could not engage in "heavy lifting (5 pounds)." (AR 39.)  Additionally, Plaintiff could not engage in prolonged overhead work, no lifting to or above shoulder level, and no repetitive bending, stooping, twisting, squatting, or turning. (*Id.*)  Dr. Newton further explained that Plaintiff "[m]ay not lift/carry at a height of 4 feet more than 5 lbs. for more than 4 hours per day." (*Id.*)  Dr. Newton also opined that Plaintiff could work with restrictions including standing, walking, and climbing for "6-8" hours. (*Id.*)  She has no restriction as to her ability to sit, kneel, crawl, grasp, push, or pull. (*Id.*)  She can bend forward and twist for "1-2" hours. (*Id.*)

The ALJ gave "limited weight" to Dr. Newton's June 2013 and August 2015 opinions. (AR 70.)  The ALJ explained that Dr. Newton's June 2013 opinion that Plaintiff was "limited to 15-pound limit, plus walking, sitting[,] or standing no more than 30 minutes per hour, and a 'whole person impairment' of 27%" was adopted by Plaintiff's treating physician, Walter H. Burnham, M.D. (*Id.*; *see* AR 705-08.) However, the ALJ noted that Dr. Burnham indicated in November 2014 that Plaintiff could lift up to 20 pounds and he was encouraging Plaintiff to walk two miles per day. (AR 70.)  The ALJ concluded that the record did not support greater limitations. (*Id.*)

Plaintiff contends that the ALJ erred in failing to "state legally sufficient reasons for rejecting the opinions of Dr. Newton limiting [Plaintiff] to 15 pounds, no repetitive lifting to or above shoulder level, and no single posture (walking, sitting, or standing) more than 30 minutes per hour." (JS 10.)

As an examining physician whose opinion has been contradicted by a treating physician, Dr. Burnham, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Newton's opinions. *See Lester*, 81 F.3d at 830.  An ALJ provides a specific and legitimate reason for discounting a physician's opinion where the opinion is inconsistent with the medical

23

record. *Fennell v. Berryhill*, 721 F. App'x 652, 654 (9th Cir. 2018) (finding that the ALJ gave specific and legitimate reasons for discounting a physician's opinion namely because the opinion was inconsistent with the longitudinal medical record); *see Tommasetti*, 533 F.3d at 1041.

Here, the ALJ reasoned that greater limitations were not supported by the record because Plaintiff's condition had improved significantly with treatment and "she retained grossly intact strength, mobility, and sensation without focal motor deficits and is able to engage in significant physical activity including bike riding, swimming, and walking." (AR 70, citing AR 485, 660, 680, 682, 702, 724, 728, 733, 739, 757, 764, 790, 842, 1008.) The ALJ relied on multiple records documenting Plaintiff's improvement. (*Id.*) Although the evidence may be susceptible to more than one rational interpretation, the ALJ's interpretation of the evidence is rational and must be upheld. *See Ryan*, 528 F.3d at 1198 (citing *Burch*, 400 F.3d at 679); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). Accordingly, the Court finds that the ALJ offered a legally sufficient reason for discounting Dr. Newton's June 2013 and August 2015 opinions.

After the ALJ's decision, Plaintiff submitted a request for review to the Appeals Council and submitted additional evidence including Dr. Newton's August 2018 evaluation in support of her claim. (AR 1-4.) In denying Plaintiff's request, the Appeals Council found that Dr. Newton's August 2018 evaluation did not relate to the period at issue and thus did "not affect the decision about whether [Plaintiff was] disabled beginning on or before May 31, 2018." (AR 2.)

As to Dr. Newton's August 2018 evaluation, Plaintiff contends that "the evaluation describes the status after surgical procedures before the date of the ALJ's decision." (JS 10.) According to Plaintiff, "[t]he medical evidence counts in the substantial evidence and analysis." (JS 10-11.)

///

"The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). Where the Appeals Council has determined that the new evidence does not correspond to the period on or before the date of the ALJ's decision, the evidence is not part of the administrative record, and thus the claimant has the burden of "demonstrating materiality and good cause for remand under 42 U.S.C. § 405(g)." *Bales v. Berryhill*, 688 F. App'x 495, 496 (9th Cir. 2017); *see also Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001).

"To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes*, 276 F.3d at 463. "To be material, the new evidence must bear 'directly and substantially on the matter in dispute.'" *MacKelvey v. Berryhill*, No. 2:16-CV-08044-KES, 2017 WL 4564697, at *5 (C.D. Cal. Oct. 11, 2017) (quoting *Mayes*, 276 F.3d at 462). "This means it must be probative of the claimant's condition at or before the time of the disability hearing." *Id.*

Here, the Court finds that Plaintiff has not established good cause for the late submission of evidence. While the evidence was unavailable until August 15, 2018, when Dr. Newton examined Plaintiff, "[a] claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied." *Mayes*, 276 F.3d at 463. Plaintiff provides no explanation as to why Dr. Newton's opinion was not sought earlier. (*See* JS 5-11, 14-16.) Accordingly, Plaintiff fails to meet the good cause requirement and remand is not warranted in connection with Dr. Newton's August 2018 evaluation. *See Carter v. Berryhill*, 738 F. App'x 534, 536 (9th Cir. 2018) ("[Claimant] fails to establish good cause because he offers no explanation for why this evidence was not available earlier."); *Rodriguez v. Comm'r of Soc. Sec. Admin.*, No. SACV 17-1456 JC, 2018 WL 6831535, at *11 (C.D. Cal. Dec. 27, 2018) ("Plaintiff does not establish good cause simply by

1   obtaining a new report from a physician who effectively reiterates the same medical

2   opinions that the ALJ rejected in an unfavorable decision.").

3   ### d.    Vocational Expert's Testimony at Step Five

4   Within her argument regarding the ALJ's consideration of the medical

5   opinions, Plaintiff contends that the ALJ erred at step five.  (JS 9-10; *see* JS 11.)

6   Plaintiff argues that the "vocational expert did not respond to a question involving

7   any limitation in standing/walking."  (JS 9-10.)  Plaintiff appears to contend that, as

8   a result, the ALJ erred in relying on the VE's testimony at step five in finding that

9   Plaintiff could perform the occupations of (1) cleaner, housekeeping; (2) laundry

10  worker, domestic; and (3) storage facility clerk.  (JS 9-10; *see* AR 73.)

11  At step five, the burden shifts to the Commissioner "to identify specific jobs

12  existing in substantial numbers in the national economy that [a] claimant can perform

13  despite [his] identified limitations."  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir.

14  2015) (alteration in original) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th

15  Cir. 1995)).  The Commissioner can meet that burden through VE testimony or "by

16  reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.

17  2."  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

18  Here, the ALJ presented the VE with a hypothetical person sharing the same

19  general RFC as Plaintiff.  (AR 176-77.)  Specifically, the ALJ asked the VE to

20  consider an "individual [that] can perform work at the light exertional[] level as that

21  term is defined within the applicable Rulings and Regulations."  (AR 176.)  After

22  asking some follow-up questions, the ALJ asked the VE whether there were jobs in

23  the national economy that the hypothetical person could perform.  (AR 177.)  The

24  VE responded: "Yes, Judge.  Pretty much all of the full range of light, unskilled

25  work."  (*Id.*)  The ALJ confirmed with the VE that he "did state occasional for all

26  postural limitations" and "non-exertional limitations."  (AR 177-78.)  The VE then

27  testified that Plaintiff could perform the occupations of cleaner, housekeeping;

28  laundry worker, domestic; and storage facility clerk.  (AR 178.)  "The hypothetical

that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper." *Bayliss*, 427 F.3d at 1217. Accordingly, the ALJ did not err in relying on the VE's testimony at step five.

### 3.   Conclusion

The ALJ did not err in giving Dr. Bernabe's opinion partial weight or in connection with the limitations opined by Drs. Chan and Berry. Similarly, the ALJ did not err in giving Dr. Newton's June 2013 and August 2015 opinions limited weight. As to Dr. Newton's 2018 opinion, Plaintiff has failed to meet her burden to show good cause for the late submission of this evidence. In sum, remand is not warranted.

## V.   **CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  April 17, 2020

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### **NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**